UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS ORTIZ,                                    :

      Plaintiff,                        :

      vs.                               :                    No.  3:14cv491(WIG)

CAROLYN COLVIN,                                :
Acting Commissioner of
Social Security,                               :

      Defendant.                        :
-----------------------------------------------------X


**RECOMMENDED RULING ON PENDING MOTIONS**

      Plaintiff Luis Ortiz has filed this appeal of the adverse decision of the Commissioner of

Social Security denying his applications for a period of disability and disability insurance

benefits. Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing the

decision.  [Doc. # 14].  Defendant has responded with a motion to affirm the decision of the

Commissioner.  [Doc. # 15].  For the reasons set forth below, the Court recommends that the

decision of the Commissioner should be affirmed.

**Procedural History**

      On October 12, 2010, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits, alleging an onset date of March 30, 2005.  His claim was denied

initially and upon reconsideration.  Plaintiff then filed a request for hearing; a hearing was held

before Administrative Law Judge James E. Thomas (the "ALJ") on June 7, 2012.  The ALJ

issued a decision on July 27, 2012 concluding that Plaintiff has not been disabled from March

30, 2005 through the date of the ALJ's decision.  Plaintiff appealed the ALJ's decision to the

Appeals Council.  In a decision dated February 10, 2014, the Appeals Council denied the appeal

and upheld the ALJ's decision, making the ALJ's decision final for appeals purposes.  This appeal ensued.

### Factual Background

Plaintiff was forty-seven years old at the time the ALJ issued his decision.  (R. 34).  He earned his GED, and has taken some course work in computers.  (R. 34-35).  Plaintiff last worked at Cleary Millwork in March 2005 as a forklift operator.  (R. 36).  On March 31, 2005, Plaintiff was injured in a workplace accident.  (R. 35).  This accident was a compensable injury under Connecticut's Worker's Compensation Act, and Plaintiff's worker's compensation case was settled in 2009.  (R. 169).  Prior to his position at Cleary Millwork, Plaintiff worked for other employers as a forklift operator and as a warehouse worker.  (R. 37-38).

### Medical History

On April 8, 2004, Plaintiff saw Dr. Dugdale for an injury to his left arm which occurred while Plaintiff was working as a warehouse clerk.  (R. 356).  Since the injury, Plaintiff had discomfort with lifting and overhead activity.  (*Id.*).  Plaintiff was diagnosed with an acute left long head of biceps tear with possible rotator cuff pathology.  (R. 357).  Plaintiff underwent surgery to address this injury on April 14, 2004; a biceps tenotomy was performed arthroscopically.  (R. 359).  On April 27, 2004, Plaintiff returned to Dr. Dugdale for a post-surgery follow up visit.  (R. 362).  Plaintiff was cleared to return to light work duty.  (*Id.*).  On July 9, 2004, Plaintiff was cleared to return to full work duty without restrictions.  (R. 364).

Plaintiff was admitted to Hartford Hospital on April 1, 2005 after being involved in an accident at Cleary Millwork: a forklift pinned him to a steel beam.  (R. 287).  Plaintiff complained of back, chest, neck, and wrist pain following the incident.  (R. 289).  Upon discharge on April 7, 2005, Plaintiff was diagnosed with splenic laceration, small; right adrenal

laccration; and status post transfusion of three units packed red blood cells. (*Id.*). Plaintiff was also noted to have an inguinal hernia, which was not incarcerated and was reducible; he was given temporary treatment and advised to follow up on an outpatient basis for operative repair. (R. 292). Plaintiff had the hernia repaired in June of 2005. (R. 420).

On June 7, 2005, Plaintiff returned to Dr. Dugdale for a disability rating on his left shoulder. (R. 365). Plaintiff reported experiencing continued pain in his left arm with any attempts at repetitive forward reaching and overhead activity. (*Id.*). Upon examination, Dr. Dugdale found mild, diffuse atrophy about the left shoulder girdle, full range of motion, positive impingement findings, pain with resisted elbow flexion, no clinical instability, some patellofemoral crepitus in midrange, no scapular winging, and sensation intact. (*Id.*). Dr. Dugdale found Plaintiff had reached maximum medical improvement and assigned a 10% permanent partial disability to the upper left extremity. (R. 366). Dr. Dugdale further diagnosed permanent restrictions precluding lifting more than thirty pounds repetitively, repetitive forward reaching, or overhead activity. (*Id.*).

Plaintiff had a lumbar MRI on June 30, 2005. (R. 492). The MRI showed L4-L5 moderate posterior broad-based disc bulge minimally impinging upon the proximal left and right L5 nerve roots. (*Id.*). The MRI also showed that, in other places in the lumbar spine, multilevel moderate degenerative disc disease was present without associated nerve root impingement. (*Id.*).

Dr. Boolbol, Plaintiff's pain management doctor, performed a translaminar epidural steroid injection on September 8, 2005, to treat Plaintiff's lower back pain radiating down the bilateral lower extremities. (R. 351). At a follow up visit on October 5, 2005, Plaintiff reported at least 50% symptomatic improvement in his bilateral lower extremities. (R. 353). Plaintiff

further reported that most of his pain was in his lumbar spine. (*Id.*). Dr. Boolbol recommended a repeat injection, which was performed on November 17, 2005. (R. 353, 340). At a follow up visit on December 7, 2005, Plaintiff reported 50% symptomatic improvement for a week, and that then his symptoms returned. (R. 342). Plaintiff reported a 100% improvement in pain in his left lower extremity, but that pain continued in the right. (*Id.*). Dr. Boolbol again recommended a repeat injection, which was performed on March 9, 2006. (R. 342, 347). At a follow up visit on May 24, 2006, Plaintiff no longer had lower extremity radicular pain, but his low back pain continued. (R. 412). Dr. Boolbol recommended a repeat injection, and if that does not relieve the pain, a lumbar spine medial branch block. (*Id.*).

An independent medical examination was conducted by Dr. Lucier on February 27, 2007 in relation to Plaintiff's forklift accident injuries. (R. 419). Plaintiff's chief complaint was low back pain, aggravated by certain activities and movements. (R. 420). Upon examination, Dr. Lucier diagnosed lumbar spondylosis with radicular and mechanical back pain. (R. 422). Dr. Lucier opined that, at that time, Plaintiff could work in a light duty sedentary job that involved no lifting, no prolonged sitting, and limited bending. (R. 423). He further opined that Plaintiff would need further back pain treatment in order to reach maximum medical improvement. (*Id.*).

Plaintiff returned to Dr. Dugdale on October 27, 2007 for a reassessment of his left shoulder. (R. 367). Plaintiff reported pain and cramping in his left arm, interfering with daily, recreational, and professional activities. (*Id.*). Dr. Dugdale assigned an additional 5% permanency, making his total permanent partial impairment 15%. (*Id.*). Dr. Dugdale advised that further surgical intervention would likely not be beneficial. (*Id.*).

On November 9, 2007, Plaintiff saw Dr. Wakefield, a neurosurgeon, for an independent medical examination. (R. 424). Plaintiff reported persistent pain since the forklift accident.

(*Id.*).  Plaintiff reported that the injections performed by Dr. Boolbol would relieve pain for about a week or two, and then the pain would return, but that the pain had not returned to what it was at pre-injection levels.  (*Id.*).  Dr. Wakefield found Plaintiff's pain distribution to be consistent with an S1 radiculopathy.  (R. 425).  He declined to recommend any surgical intervention to Plaintiff, and assessed that a weight reduction or conditional program would benefit Plaintiff.  (*Id.*).  He also advised that another MRI should be performed to ascertain whether there had been any change regarding S1 root compression or disc herniation.  (*Id.*).  Dr. Wakefield opined that Plaintiff had sedentary work capacity, would need to change positions at regular intervals, not lift more than 10-20 pounds, and not twist, bend, crawl, or work from heights.  (*Id.*).

Plaintiff went to the Spine and Pain Rehabilitation Center for treatment starting in December 2008.  (R. 434).  In December 2008 through January 2009 Plaintiff was treated with electrical muscle stimulation, flexion distraction manipulation, lumbar extensor, and spinal stabilization training.  (R. 426-434).

Plaintiff continued treatment with Dr. Boolbol for pain management.  On December 3, 2009, Plaintiff complained of sharp and shooting pain in his lower back, noting that the weather affects his pain.  (R. 506).  A lumbar medial branch block was recommended.  (*Id.*).  In January of 2009, Plaintiff again complained of sharp and shooting pain radiating down his right leg; he also reported he was not sleeping well due to pain and that Percocet was not as effective.  (R. 505).  Plaintiff reported low back pain in further sessions with Dr. Boolbol in February 2010, March 2010, and April 2010.  (R. 502-504).  On May 18, 2010, Dr. Boolbol performed a lumbar spine medial branch block.  (R. 501).  On July 15, 2010, Plaintiff reported that after the procedure his pain was fully relieved for about one to two weeks, but then gradually returned.  (R. 500).  He returned to Dr. Boolbol in August, September, November, and December of 2010,

and in January of 2011, complaining of low back pain radiating down the right leg.  (R. 495-499).

Dr. Christie wrote a memo to Plaintiff's primary care physician Dr. Wesceslao, on March 17, 2010 regarding Plaintiff's hernia history.  (R. 553).  Dr. Christie noted that Plaintiff had an umbilical hernia repair in 2000 and laparoscopic bilateral inguinal hernia repair in 2005.  (*Id.*).  Dr. Christie found recurrent incisional hernia most likely related to weight gain, strenuous activity at work, and laparoscopic hernia repair.  (R. 554).  He recommended repair of the recurrent incisional hernia laproscopically, which was performed on June 30, 2010.  (R. 554, 435).

At the time of the hearing before the ALJ, Plaintiff was taking the following medications: Actos to treat diabetes; Tricor to treat high triglycerides; Oxycodone to treat pain;  Opana to treat pain; Viagra to treat erectile dysfunction; Lisinopril to treat high blood pressure; Cymbalta to treat depression;  and Bupropion to treat depression.

### Agency Documents

Plaintiff completed an Activities of Daily Living Questionnaire ("ADL") on November 15, 2010.  (R. 201).  He reported being in constant pain which caused him to have difficulty sleeping.  (R. 202).  He could not bend down to tie his shoes on his own, and he did not need any special reminders to take care of his personal grooming.  (*Id.*).  He reported that his wife prepares his meals but that he can make a sandwich.  (R. 203).  He can vacuum, iron, and help out with laundry, mopping, and dusting.  (R. 204).  He drives and does shopping.  (R. 204-205).  His hobbies include reading and watching television.  (R. 205).  Plaintiff reported that he cannot lift more than 10 pounds, cannot stand for more than 15 minutes, and cannot walk as far and for as long as before.  (R. 206).  Plaintiff indicated that he uses a cane.  (R. 207).  Finally, Plaintiff

added that he gets only limited relief from pain medications, and is in extreme pain when it wears off.  (R. 208).

A second ADL was completed by Plaintiff (through his attorney) on June 27, 2011.  (R. 234).  He reported that all personal care tasks take him a significant amount of time.  (R. 235).  He reported that he mostly does not prepare his meals, but that he can make sandwiches and coffee.  (R. 236).  Plaintiff indicated he can dust and vacuum a room with periods of rest, and that he cannot lift and carry most objects.  (R. 237).  He does shopping in stores.  (R. 238).  His hobbies and interests include reading, watching television, and using the computer, and he does these things daily.  (*Id.*).

Dr. Boolbol completed a Physical Residual Functional Capacity Questionnaire on February 1, 2012.  He opined that Plaintiff's pain would constantly interfere with the attention and concentration needed to perform even simple work tasks, and that Plaintiff is capable of low stress jobs.  (R. 597).  He opined that Plaintiff can sit for one hour and 30 minutes before needing to get up, can stand for ten minutes at a time, and can sit and stand/walk not less than two hours in an eight hour workday.  (R. 597-598).  He indicated Plaintiff would need to walk for ten minutes every ten minutes, and would need a job that allows him to shift positions at will from sitting to standing or walking.  (R. 598).  Dr. Boolbol further opined that Plaintiff would need to take 10-15 minute breaks every hour during an eight hour workday.  (*Id.*).  He opined that Plaintiff can never lift 50 pounds, and can never crouch/squat or climb ladders.  (R. 598-599).  He found Plaintiff to have no significant limitations with reaching, handling, or fingering.  (*Id.*).  He estimated that Plaintiff would likely be absent four days per month as a result of his impairments.  (R. 599).

Finally, Dr. Christie submitted a Medical Opinion regarding Plaintiff's ability to do physical work-related activities.  (R. 601).  He opined that Plaintiff was unable to lift or carry any weight, could stand and walk for less than two hours, and could sit for less than two hours.  (R. 601).  He indicated that Plaintiff could sit for one hour before needing to change position, and could stand for 20 minutes before needing to change position.  (*Id.*).  He opined that Plaintiff must walk for five minutes every hour.  (R. 602).  He further opined that Plaintiff would need to shift at will from sitting to standing/walking, and would sometimes need to lie down.  (*Id.*).  In listing the medical findings that supported these limitations, Dr. Christie wrote "epigastric hernia on C/T scan; history crush to lung, spleen, spine."  (*Id.*).  He opined that Plaintiff could never twist, scoop, crouch, climb stairs, or climb ladders.  (*Id.*).  He opined that reaching, fingering, and pushing/pulling were affected by Plaintiff's impairment.  (*Id.*).  The basis for this was herniated discs L3-L4.  (*Id.*).  Dr. Christie opined that Plaintiff should avoid all exposure to fumes, odors, dusts, gases, and poor ventilation, and to hazards, and should avoid even moderate exposure to extreme cold.  (R. 603).  He also added that Plaintiff's impairment would affect his ability to kneel, crawl, and balance, but did not include any supporting medical findings.  (*Id.*).

**<u>Proceedings before the ALJ</u>**

At the hearing before the ALJ, Plaintiff, who was represented by an attorney, testified that he has constant pain in his lower back area.  (R. 42).  He testified that this pain limits his ability to do things around the house, and that a back massager gives him some relief.  (R. 43).  Plaintiff spoke of his pain treatment program, saying it gives him some relief.  (R. 44).  Plaintiff testified that sitting for too long causes discomfort, and that after five to ten minutes of standing he needs to take a walking break.  (R. 45).  Plaintiff testified that his wife does most of the household chores, but that he can do a small amount of cooking and prepare himself a sandwich.

(R. 46-47).  Plaintiff testified that he lives on the second floor of a multi-family home, and has to climb about 15 stairs to get to his apartment.  (R. 48).  Plaintiff testified that he could sit at a computer, he has no problems moving his hands, and that his back is the only problematic area. (R. 51).  Plaintiff testified that he cannot lift heavy objects.  (R. 53).  Plaintiff said that if there was a job available where he could get up and stretch regularly, he would prefer to have a job. (R. 62).

Plaintiff also testified that he had been diagnosed with depression.  (R. 41).  He stated he had been seeing Dr. Goldstein for treatment of emotional issues.  (R. 54-55).  Plaintiff testified that Dr. Goldstein told him he has some depression, but not chronic depression.  (R. 55).

A Vocational Expert ("VE") also testified at the hearing.  The ALJ asked the VE if an individual of the same age, vocational background, and education level as the Plaintiff who could work at the light exertional level but requires a sit/stand option, and is further limited to occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; who is limited to frequent reaching but no overhead reaching or lifting, could perform any of Plaintiff's past work.  (R. 68).  The VE responded in the negative.  (R. 69).  As to whether there are any jobs such an individual could perform, the VE testified that such a person could work as a cashier, ticker seller, and a ticket taker, as these positions are all described in the *Dictionary of Occupational Titles* ("DOT") as at the light level.  (*Id.*).  The VE explained that these positions would differ from the descriptions in the DOT in that they allow for a sit/stand option, which is not defined in the DOT.  (*Id.*).  The VE also testified that these positions would be available at the sedentary exertion level as well, but in reduced numbers.  (*Id.*).  The VE added that these positions allow for minimal lifting – less than ten pounds.  (*Id.*).  The VE went on to explain that, though the DOT does not set out a

sit/stand option, the VE's answers in this area are based on his observation, research, and relevant literature in the field.  (R. 70).  The VE noted that there was no other conflict between his testimony and the DOT.  (*Id.*).

### The ALJ's Decision

The ALJ properly applied the established five-step, sequential evaluation test for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  Step one determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  Here, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of March 30, 2005 through his date of last insured, September 30, 2011.  (R. 15).

At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments.  In this case, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, injury to upper extremity, and recurrent hernia.

At the third step, the ALJ evaluates the claimant's impairments against the list of those impairments that the Social Security Administration acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d), 20 C.F.R. Part 404, Subpart P, App. 1 (2010) (hereinafter "the Listings").  If the impairments meet or medically equal one of the Listings, the claimant is conclusively presumed to be disabled.  In this case, the ALJ considered Plaintiff's physical and mental impairments, alone and in combination, and concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 16).

At step four, the ALJ must first assess the claimant's residual functional capacity ("RFC") and then determine whether the claimant can perform his past relevant work.  20 C.F.R.

§ 404.1520(f).  Here, after considering the record as a whole and evaluating Plaintiff's credibility

and subjective complaints of pain and other symptoms, the ALJ found that Plaintiff has the RFC

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[1] except that he requires a

sit/stand option; he can occasionally climb ramps and stairs; he cannot climb ladders, ropes, or

scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; and he can frequently

reach, but cannot reach or lift overhead.  (R. 16).  The ALJ then determined that Plaintiff was

unable to perform any of his past relevant work.  (R. 21).

Finally, at step five, the ALJ must determine, considering the claimant's age, education,

work experience, and residual functional capacity, whether there are jobs existing in significant

numbers in the national economy claimant can perform.  20 C.F.R. § 404.1569.  In this case, the

ALJ concluded that the jobs of cashier, ticker seller, and ticket taker are available.  (R. 22).  As

such, the ALJ determined that Plaintiff was not under a disability at any time from the alleged

onset date through the date last insured.  (*Id.*).

### **Standard of Review**

Under 42 U.S.C. § 405(g), the district court may "enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing."  Judicial review of the

Commissioner's decision is limited.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  It is not

the Court's function to determine *de novo* whether the claimant was disabled.  *Schaal v. Apfel*,

134 F.3d 496, 501 (2d Cir. 1998).  Rather, the Court must review the record to determine first

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567.

whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."); *see also Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the Court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be that evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

<u>**Discussion**</u>

In this appeal, Plaintiff raises three arguments in support of his position that a reversal of the ALJ's decision is required.  First, Plaintiff asserts that the ALJ's finding that Plaintiff did not have a severe mental impairment is not supported by substantial evidence.  Second, Plaintiff argues that the ALJ failed to comply with the "treating physician rule."  Finally, Plaintiff claims that the ALJ improperly relied on the Vocational Expert's testimony.

*1.  <u>Severe Impairments</u>*

Plaintiff first argues that the ALJ failed to develop the record as to Plaintiff's mental health impairment and in so doing did not properly evaluate Plaintiff's impairments singly or in combination.  The Commissioner responds that the ALJ correctly found that the record revealed no objective evidence of a mental impairment which would limit Plaintiff's ability to perform work-related functions.

At the second step of the disability evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 C.F.R. § 404.1520(c).  At this step, medical evidence alone is considered in assessing the effect of the impairment or impairments on an individual's ability to do basic work activities.  SSR 85–28 (S.S.A. 1985).

The regulations provide that the ALJ is to consider the combined effects of all of a claimant's impairments without regard to whether any one impairment, if considered separately, would be of sufficient severity to be the basis of eligibility under the law.  *See* 20 C.F.R. § 404.1523.  If the claimant is found to have a medically severe combination of impairments, the combined impact of those impairments will be considered throughout the disability determination process.  *Id.*  An impairment or combination of impairments is considered "not severe" and a finding of "not disabled" is made at this step when the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.  SSR 85–28.

It is clear that, even when a social security disability claimant is represented by counsel, the ALJ has affirmative duty to develop the record.  *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Id.* at 112-113 (quotations marks and citation

omitted).  This duty, however, is not unlimited.  *See Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012).  Here, there was no evidence furnished by Plaintiff to support that contention that he has a severe mental impairment.  "[T]he burden of supplying all relevant medical evidence [is] on the claimant."  *Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998) (citing 20 C.F.R. § 404.1512).  *See* 42 U.S.C.A. § 423 ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Britt v. Astrue*, 486 Fed.App'x 161, 163 (2d Cir. 2012) (finding meritless an argument that an ALJ should have found an impairment severe when the claimant failed to provide the ALJ with any medical evidence showing how the alleged impairment limited his ability to work).  At the hearing, Plaintiff testified he had been diagnosed with depression, and that he had been seeing Dr. Goldstein for treatment of emotional issues.  (R. 41, 54-55).  Plaintiff stated that Dr. Goldstein told him he has some depression, but not chronic depression.  (R. 55).  Plaintiff – who was represented by counsel – did not, however, submit any records from Dr. Goldstein to support his assertion that his mental health issues are severe.  As such, the ALJ did not err in failing to find Plaintiff had a severe mental impairment.

Further, the pieces of evidence that were furnished to which Plaintiff cites – a treatment note from Plaintiff's primary care physician noting "likely depression," (R. 531) and a prescription for an anti-depressant (R. 529) – are not sufficient to establish Plaintiff's depression is a severe impairment.  A diagnosis alone will not support a finding of severity.  *See Burrows v. Barnhart*, No. 3:03cv342(CFD)(TPS), 2007 WL 708627, at *6 (D. Conn. Feb. 20, 2007) (a diagnoses of an impairment "says nothing about the severity of the condition") (citation omitted); *Ortiz v. Colvin*, No. 3:13 CV 610 (JGM), 2014 WL 819960, at *10 (D. Conn. Mar. 3, 2014) (finding no error in ALJ's finding of non-severity when claimant received treatment for

headaches but neurological testing was normal).  The Court finds that substantial evidence

supports the ALJ's evaluation of Plaintiff's impairments.

   2.   *The Treating Physician Rule*

     Next, Plaintiff argues that the ALJ ignored and mischaracterized the records of Dr.

Boolbol and dismissed the reports of Dr. Christie, and in so doing violated the treating physician

rule.  The Commissioner responds that, in determining Plaintiff's RFC, the ALJ properly

evaluated the opinions of record.

     Under the "treating physician rule," a treating physician's opinion on the issues of the

nature and severity of a claimant's impairments is given "controlling weight" if the opinion is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the case record.  *See* 20 C.F.R. § 404.1527(c)(2);

*see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  The opinion of a treating

source is accorded extra weight because of the continuity of the treatment that he or she

provides, and the doctor-patient relationship, which places him or her in a unique position to

make a complete and accurate diagnosis of the patient.  *Mongeur v. Heckler*, 722 F.2d 1033,

1039 n. 2 (2d Cir. 1983).  However, the opinion of a treating source will not be afforded

controlling weight if that opinion is not consistent with other substantial evidence in the record,

including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004); 20 C.F.R. § 404.1527(c)(2).

     Even when a treating physician's opinion is not given "controlling" weight, the

regulations require the ALJ to consider several factors in determining how much weight it should

receive.  *Halloran*, 362 F.3d at 32.  Those factors include the length of the treatment relationship;

the nature and extent of the treatment relationship; the supportability of the treating physician's

opinion particularly by medical signs and laboratory findings; its consistency with the record as a

whole; the physician's area of specialty; and other factors brought to the attention of the Social

Security Administration that tend to support or contradict the opinion.  *Id.*; 20 C.F.R. §

404.1527(c)(2).  After considering these factors, the ALJ must comprehensively set forth his

reasons for the weight assigned to a treating physician's opinion.  SSR 96-2P, 1996 WL 374188,

at *5 (S.S.A. July 2, 1996).  Failure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand.  *Sanders v. Comm'r of Soc. Sec.*, 506

Fed.App'x 74, 77 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Snell v.*

*Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

### a.  Dr. Boolbol

Plaintiff essentially argues that the ALJ cherry-picked pieces of Dr. Boolbol's treatment

notes and records to support a finding that his treatment with Plaintiff for pain management was

effective.  The ALJ determined that the RFC Questionnaire completed by Ms. Chamink (on

behalf of Dr. Boolbol) should be accorded little persuasive weight.  First, the ALJ found that the

Questionnaire was inconsistent with other medical records showing no deterioration of the spine

since Plaintiff's original accident in 2005.  Next, the ALJ found that Dr. Boolbol's treatment

records do not indicate any worsening of Plaintiff's condition.  Finally, the ALJ found that Dr.

Boolbol failed to provide a narrative explanation for the limitations he ascribed to Plaintiff in the

Questionnaire.

The treating physician rule applies only when "the treating physician's opinion [is] well

supported…"  *Burden v. Astrue*, 588 F. Supp. 2d 269, 275 (D. Conn. 2008).  When a treating

source does not provide objective medical evidence to support his or her opinion, it is not legal

error to assign that opinion little weight.  *See Villella v. Astrue*, 588 F. Supp. 2d 253, 267 (D.

Conn. 2008) (affirming a finding that a treating source's opinion should not be given controlling weight when the doctor provided "no x-rays or imagining studies, few EKGs, and a limited number of blood test results" as evidence "to support his assessment of [claimant's] impairments."); *Feretti v. Colvin*, No. 3:13-cv-00753 (AVC), 2014 WL 3895921, at *6 (D. Conn. Aug. 8, 2014) (finding no error when the ALJ discounted a treating source's opinion because it was not supported by "consistent clinical findings."). The Court, therefore, rejects Plaintiff's argument that the ALJ violated the treating physician rule as to Dr. Boolbol.[2]

### b.  Dr. Christie

Plaintiff argues that the ALJ erred in concluding that Dr. Christie is not a treating source because his expertise as a general surgeon is less applicable to a disability determination than reports in the record from specialists.  A treating physician is one who has or has had an ongoing treatment relationship with the claimant.  20 C.F.R. § 404.1502.  An ongoing treating relationship is present "where the medical evidence establishes treatment frequency consistent with the medical practice for the type of medical condition.  The Commissioner, however, will not find an ongoing treating relationship where the sole source of the medical relationship arises out of a need to obtain a report in support of a disability claim." *Austin v. Astrue*, No. 3:09cv765 (SRU), 2010 WL 7865079, at *10 (D. Conn. Sept. 30, 2010) (internal citations omitted).

The Court finds it need not reach the issue of whether Dr. Christie should have been considered a treating source because, even if he had been, his opinion would not be entitled to controlling weight for the same reasons as Dr. Boolbol's.  Dr. Christie completed an RFC

---

[2] As to the statements of pain in Dr. Boolbol's treatment notes, the Court points out that "[w]hile a claimant's self-reported symptoms are certainly an essential diagnostic tool, that does not automatically transform them into medical opinion." *See Burden* at 276.  Plaintiff's arguments in support of his position that controlling weight should have been given to the treatment notes of Dr. Boolbol are supported by such transcriptions of Plaintiff's complaints to his physician.  These are not medical opinions and cannot be treated as such. *See id.*

Questionnaire but did not sufficiently explain why he assigned the limitations that he did other than to cite Plaintiff's injury and surgeries.  As discussed above, when objective medical evidence does not support a medical opinion, that opinion is not entitled to controlling weight.  The Court, likewise, rejects Plaintiff's argument that the ALJ violated the treating physician rule as to Dr. Christie.

### c.  Independent Medical Examination Reports

Plaintiff also argues that the ALJ improperly gave great weight to the reports of Drs. Wakefield and Lucier in violation of the treating physician rule.

Dr. Wakefield, a neurosurgeon, evaluated Plaintiff on November 9, 2007.  He declined to recommend any surgical intervention, and opined that a weight reduction program would be beneficial.  (R. 425).  Dr. Wakefield opined that Plaintiff had sedentary work capacity, would need to change positions at regular intervals, could not lift more than 10-20 pounds, and could not twist, bend, crawl, or work from heights.  (*Id.*).

Dr. Lucier conducted an independent medical examination on February 27, 2006.  He opined that Plaintiff could perform a light duty sedentary job with no lifting, no prolonged sitting, and limited bending.  (R. 423).

The ALJ gave great weight to these opinions because they were based upon Dr. Wakefield's and Dr. Lucier's personal evaluations of Plaintiff, and were consistent with the medical records as a whole indicating no deterioration in Plaintiff's condition since 2005.  (R. 20).

In making an RFC finding, the ALJ can, and must, "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  When the medical evidence is not perfectly aligned, the ALJ, as

factfinder, must resolve the conflict.  *See id.* (citing *Richardson v. Perales,* 402 U.S. 389, 399

(1971)).  The Court finds that the ALJ's RFC finding is supported by substantial evidence[3].

*3.   The Step Five Finding*

Finally, Plaintiff argues that the ALJ's step five finding is not supported by substantial

evidence because the VE's testimony, on which the step five finding is based, was inconsistent

with the DOT and the basis for the VE's opinion was not fully ascertained.  The Commissioner

responds that the ALJ is not required to make a VE produce his or her sources or to expressly

state the reasons for accepting a VE's testimony.

The claimant bears the burden of proof at the first four steps of the sequential test, but the

Commissioner bears the burden at the fifth step to prove that there is work in the national

economy that the claimant is capable of performing.  *E.g. Poupore v. Astrue*, 566 F.3d 303, 306

(2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Here, in making a finding

that Plaintiff was capable of working, the ALJ relied on the testimony of a vocational expert.  (R.

83-84).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long

---

[3] To the extent that Plaintiff argues, as an ancillary matter, that Plaintiff's subjective pain
is sufficient for establishing disability, the Court rejects this position because it finds that the
ALJ's decision was supported by substantial evidence.  If an ALJ finds the claimant to be
credible, the claimant's "subjective pain may not be disregarded."  *Donato v. Sec'y of Dep't of
Health & Human Servs. of U.S.*, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ is tasked with
"carefully weigh[ing]" the proof.  *Id.* at 419.  Here, the ALJ did just that.  He carefully
considered all of the evidence, including Plaintiff's statements regarding his pain, and found that
the claimant's statements relating to the intensity, persistence, and limiting effects of his
symptoms were not entirely credible.  (R. 20).  The ALJ supported this finding: he explained that
the Plaintiff's own testimony conflicted with his claim that he was incapable of substantial
gainful activity.  (R. 20).  The ALJ also explained how he weighed the medical and opinion
evidence of record, and why he assessed the RFC that he did.  (R. 16-21).  The Court is mindful
of the task at hand: it must determine if there is substantial evidence to support the
Commissioner's decision.  "The substantial evidence standard means once an ALJ finds facts,
we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."
*Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted)
(emphasis in original).  In this instance, the Court finds a reasonable factfinder would not have to
conclude otherwise.

as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and the hypothetical accurately reflects the limitations and capabilities of the claimant involved." *McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation marks and citations omitted).

In *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443(2d Cir. 2012), the Second Circuit declined to adopt the Seventh Circuit's rule that if a VE's conclusions are questioned, the ALJ has a duty to inquire as to whether the VE's conclusions are, in fact, reliable. The *Brault* court, in rejecting this approach, noted that the Federal Rules of Evidence, including those relating to reliability, do not apply to Social Security hearings. *Id.* at 449. The Court also noted that the substantial evidence standard applicable in the review of the Commissioner's denial of Social Security benefits "gives federal courts the freedom to take a case-specific, comprehensive view of the administrative proceedings, weighing all the evidence to determine whether it was 'substantial.'" *Id.* This approach requires a court to "review[…] the entirety of a VE's testimony, including the expert's methods, to make sure it rose to the level of 'substantial' evidence." *Id.* at 450.

Here, the VE stated that he based his responses to the VE's hypothetical questions on the DOT, as well as on his research, his experience and observations as a vocational expert, and on literature of how jobs are performed. (R. 70). The Court finds that the VE "identified the sources he generally consulted to determine" his conclusions, and that the substantial evidence threshold has been met. *Brault* at 450.

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors

and that his decision is supported by substantial evidence.  Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 15] should be GRANTED and that Plaintiff's Motion to Reverse [Doc. # 14] should be DENIED.

This is a Recommended Ruling.  *See* Fed. R. Civ. P. 72(b)(1).  Any objection to this Recommended Ruling must be filed within 14 days after service.  *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this   10th   day of April, 2015, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge