UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Luis Ortiz,<br>        Plaintiff,<br><br>     v.<br><br>Carolyn Colvin, Acting Commissioner of the Social Security Administration,<br>        Defendant. | No. 3:14cv491 (SRU) |

### RULING ON PLAINTIFF'S OBJECTION TO THE RECOMMENDED RULING

Plaintiff Luis Ortiz appealed the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits. On April 13, 2015, U.S. Magistrate Judge William I. Garfinkel issued a recommended ruling (the "Recommended Ruling") recommending that the decision of the Commissioner be affirmed (doc. # 17). Ortiz timely filed an objection to portions of the Recommended Ruling (the "Objection") on April 27, 2015 (doc. # 18). For the reasons set forth below, Ortiz's objection is overruled. The Recommended Ruling is adopted in part and rejected in part, and the decision of the Commissioner is reversed and remanded for further procedures consistent with this ruling.

**I.  Background**

The court assumes the parties' familiarity with the underlying facts. A full statement of the relevant facts can be found in Judge Garfinkel's Recommended Ruling. *See* Recommended Ruling, *Ortiz v. Colvin*, 3:15-cv-491 (doc. # 27).

**II. Standard of Review**

"In the face of an objection to a Magistrate Judge's recommended ruling, the [d]istrict [c]ourt makes a *de novo* determination of those portions of the recommended ruling to which an objection is made." *Smith v. Barnhart*, 406 F. Supp. 2d 209, 212 (D. Conn. 2005); *see also Burden v. Astrue*, 588 F. Supp. 2d 269, 271 (D. Conn. 2008). The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's recommended ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the court's function to determine *de novo* whether the claimant was disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on

2

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

**III. Discussion**

Ortiz raises three objections to the Recommended Ruling: (1) the ruling incorrectly concludes that the ALJ's determination that Ortiz did not have a severe mental impairment was supported by substantial evidence; (2) the ruling incorrectly concludes that Ortiz's treating physicians are not entitled to controlling evidentiary weight, thereby violating the "treating physician rule"; and (3) the ruling improperly accepts the ALJ's reliance on the Vocational Expert's testimony. Because I determine that Ortiz's second argument has merit and would functionally moot the third issue, I do not consider it further.

   A.  <u>Severe Mental Impairment</u>

Ortiz asserts that the ALJ failed to develop the record and, in any case, that there is ample evidence in the record that he did receive treatment for mental health issues.[1] Objection at 11–13.

Judge Garfinkel's recommended ruling appropriately recognizes that the ALJ has an affirmative duty to develop the record. Recommended Ruling at 13 (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). As he points out, however, the plaintiff must first carry the burden of "supplying all relevant medical evidence." *Id.* at 14 (citing *Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998)). The ALJ's determination appropriately turns on Ortiz's failure to carry that

---

[1] The ALJ rejected Ortiz's claim of severe mental impairment, stating:

> The claimant vaguely testified to "emotional problems" and testified that he has been seeing a Dr. Goldstein for the past three months for these issues. There is absolutely no evidence of any mental health treatment and no records from Dr. Goldstein.

R. at 16.

3

preliminary burden of supplying the necessary records, including from the physician claimed to be currently treating him for depression. R. at 16.

Ortiz also objects that the ruling does not squarely reject the ALJ's statement that "there is absolutely no evidence of any mental health treatment." R. at 16 That portion of the ALJ's statement is unsupported by the record, which shows on-going treatment for depression. *See, e.g.*, R. at 529–30 (diagnosing depression, prescribing Cymbalta for treatment). Judge Garfinkel's ruling should be modified slightly in that respect.

Nevertheless, as the Recommended Ruling correctly points out, Ortiz failed to provide evidence to establish a "severe" impairment under 20 C.F.R. § 404.1520(c).[2] Recommended Ruling at 13–14. Although Ortiz has argued that the record shows evidence of a diagnosis of depression and related treatment, he has not pointed to any evidence demonstrating the severity of the impairment or its impact on his ability to work in any of his filings. *Id.* (citing *Burrows v. Barnhart*, No. 3:03-cv-342(CFD)(TPS), 2007 WL 708627, at *6) (a diagnosis "says nothing about the severity of the condition") (citation omitted)). The Recommended Ruling is approved and adopted in this regard.

B.  Treating Physician Rule

Ortiz next asserts that the Recommended Ruling erroneously upholds the ALJ's determination that the opinions of two of his physicians, Dr. Robert Boolbol and Dr. Schuster Christie, are not entitled to controlling evidentiary weight, while the findings of two Independent Medical Examinations were emphasized.  Objection at 4. For the reasons discussed below, I agree with Ortiz that the ALJ's dismissal of medical evidence related to his pain treatment

---

[2] 20 C.F.R. § 404.1520(c) states:

> You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

reflects an improper application of the "treating physician" rule. Before discussing the application of that rule, however, I offer a preliminary explanation of the fundamental misunderstanding that may explain the ALJ's determination and the Recommended Ruling's subsequent affirmation.

The ALJ found that Ortiz "had the following serious impairments: degenerative disc disease, injury to upper extremity, and recurrent hernia." R. at 15. Following the procedures described in 20 C.F.R. § 404.1529(c), he then engaged in a two-step analysis[3] to evaluate Ortiz's evidence regarding pain. After discussing Ortiz's subjective and objective evidence regarding his pain, the ALJ determined that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment [indicating that he had the capacity to do sedentary work].

R. at 20.

In order to come to that conclusion, the ALJ first noted that Ortiz reported that the pain treatments administered in 2005 and 2006 had been "effective" and provided "good relief," and that Ortiz had been on pain medication from 2009 through 2011. R. at 18. As Ortiz points out, however, the ALJ failed to mention that the same medical notes on which he relied also included Ortiz's repeated statements that any relief he experienced was short-term and often incomplete. *See* Pl.'s Mot. Reverse 11–16; R. at 339, 342–350, 354, 414, 501, 506, 515, 524.

---

[3] "First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii) . . . ." *Meadors v. Astrue*, 370 F. App'x 179, 183–84 (2d Cir. 2010).

Apparently following from his finding that the pain treatment was effective, the ALJ seemingly presumed that Ortiz's initial injuries and related symptoms in 2005 were not "disabling," and instead evaluated the credibility of the medical evidence in light of whether it showed that Ortiz's condition had deteriorated since that time. *See, e.g.*, R. at 19 ("the objective imaging studies of [Ortiz's] spine reveal no deterioration of his spine since his original work-related incident in 2005"); R. at 19–20 ("the actual contemporaneous treatment records of Dr. Boolbol do not indicate any worsening of the claimant's condition"); R. at 20 ("the reports of Drs. Lucier and Wakefield are . . . consistent with the record as a whole, which indicates no deterioration of the claimant's condition since the time of his original injury in 2005"). The Commissioner's memorandum in support of her motion to affirm the decision adopted the same approach, trumpeting Ortiz's lack of evidence of "new" symptoms, Def.'s Mot. Affirm. Br. 12–14. But, as I will discuss further below, a determination that injuries have not gotten worse over time says nothing about whether those injuries and attendant symptoms were—and continue to be—disabling in the first instance.

The Recommended Ruling primarily evaluated whether the ALJ properly weighed the medical evidence in the record with respect to a showing of deterioration in Ortiz's condition. Recommended Ruling at 16–19. Because neither Dr. Boolbol nor Dr. Christie provided any narrative explanation for their suggestions that Ortiz's condition had deteriorated, *see* R. at 596–600 (Boolbol's Residual Functional Capacity Questionnaire), R. at 601–03 (Christie's Residual Functional Capacity Questionnaire), the Recommended Ruling noted that the ALJ's outcome had appropriately applied the "treating physician rule" and that his determination was supported by substantial evidence. Recommended Ruling at 17–19.

But Ortiz's objection is not focused exclusively on whether he had a deteriorating condition. Instead, he argues that the ALJ failed to give adequate weight to his treating physicians' well-documented evidence regarding pain that has persisted despite numerous treatments at a severe—albeit more or less constant—level since his original accident in 2005. Objection at 6. The Recommended Ruling rejected a version of that argument in a footnote, asserting that the ALJ's decision to accord little weight to Ortiz's *own* statements regarding his "subjective pain" was adequately explained and supported by substantial evidence. Recommended Ruling at 19 n.3. That response, however, fails to address the ALJ's arbitrary dismissal of *medical* evidence regarding Ortiz's pain provided by a treating physician and uncontradicted by other evidence in the record.

Under the "treating physician rule," a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is given "controlling weight" if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The opinion of a treating source will not be afforded controlling weight, however, where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[T]he less consistent th[e] opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In circumstances where the treating physician's opinion is not entitled to receive "controlling" weight, the regulations require the ALJ to consider several factors to determine

how much weight the physician's opinion should receive. *Halloran*, 362 F.3d at 32. Those factors include: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.*; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ must set forth his or her reasons for the weight assigned to a treating physician's opinion in the notice of determination. *Id.* Failure to provide sufficient reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Snell*, 177 F.3d at 133.

Recognizing that pain itself can be disabling, *see Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981), I conclude that the ALJ failed to provide the appropriate controlling weight to Dr. Boolbol's testimony regarding Ortiz's pain symptoms under the treating physician rule. In so ruling, I again state that, in his treatment of Ortiz's pain symptoms, the ALJ did not determine that Ortiz's medically determinable injuries would not cause *any* pain; rather, he found that the alleged severity of those symptoms was not borne out by the evidence presented *because there was no evidence of deterioration.* What is at issue here is whether the ALJ reasonably determined that Boolbol's medical evidence regarding *constant* pain symptoms suffered by Ortiz since 2005 was not entitled to controlling weight because of contradictions in the record. In the absence of any such contradictions, I hold that it was not.

According to the Residual Functional Capacity Questionnaire (the "RFC") provided by Chamink on Dr. Boolbol's behalf, Dr. Boolbol had been seeing Ortiz specifically for his pain

symptoms roughly once a month from 2005 through 2012—clearly rendering him a "treating physician." *See* R. at 596; *see also Green-Younger*, 335 F.3d at 107 (according controlling weight to a physician who had coordinated the patient's pain management for over three years). The RFC further stated that Ortiz suffered from symptoms including "low back pain radiating to both lower extremities. Pain is described as sharp, throbbing, and decreases his activities of daily living." *Id.* It further stated that Ortiz had "increased [illegible] throbbing pain with minimal changes in position." *Id.* In response to the question of how often Ortiz's experience of pain would interfere with "attention and concentration needed to perform even simple work tasks," Chamink checked the line indicating "constantly." R. at 597. She further indicated that Ortiz was likely to be absent from work for treatment "about four days per month." R. at 599.

As noted above, the Recommended Ruling approved of the ALJ's decisions to give the RFC little weight because of its lack of narrative explanation. Recommended Ruling at 15–16. That may be an accurate assessment of the portions of the RFC asserting, without obvious basis, that Ortiz would need to be absent for four days a month, R. at 599. But with regard to the intensity of Ortiz's pain symptoms generally, the statements in the RFC were entirely supported by Dr. Boolbol's treatment of the patient since 2005. The vast majority of the notes he provided, which include records of roughly monthly appointments from September 2005 to January 2011, refer to Ortiz's "sharp," "shooting," or "radiating" back and leg pain. *See* R. at 338–353; 495–515. Judge Garfinkel correctly notes that "[w]hile a claimant's self-reported symptoms are certainly an essential diagnostic tool, that does not automatically transform them into medical opinion." Recommended Ruling at 17 n.2 (quoting *Burden v. Astrue*, 588 F. Supp. 2d 269, 276 (D. Conn. 2008)). In *Burden*, however, the doctor clearly distanced himself from the patient's statements as self-reported and subjective, and recommended largely "passive care" to address

her complaints. *Burden*, 588 F. Supp. 2d. at 275. Here, by contrast, Dr. Boolbol functionally adopted Ortiz's reports of pain by responding to them with escalating forms of treatment, including pain medication, steroidal injections, and a lumbar spine medial branch block. Thus, the present case is more akin to *Green-Younger v. Barnhart*, 335 F. 3d 99 (2d Cir. 2003), in which the Second Circuit held that a treating physician's opinion was adequately supported where he relied on the patient's subjective complaints *and* "ordered various treatments, including medication, trigger point steroid injections and epidural blocks, and physical . . . therapy." *Id.* at 107.

In concluding that Dr. Boolbol's evidence was not entitled to controlling weight on the question of degeneration, the ALJ also relied heavily on 2007 assessments by Drs. Wakefield and Lucier. R. at 18. But both reports—conducted *after* the 2005 and 2006 treatments that the ALJ asserted had provided Ortiz with "good relief"—were consistent with Boolbol's assessment of Ortiz's on-going pain. Moreover, both doctors pointed to objective medical evidence supporting Ortiz's subjective complaints of pain. For instance, Dr. Wakefield observed that Ortiz had "long standing persistent back pain and now leg pain down the right side for approximately a year or more. The distribution is consistent with an S1 radiculopathy." R. at 425. Dr. Lucier's report is even more supportive: he notes several "objective findings corroborating [Ortiz's] claim [of] low back pain," including "demonstrated degenerative disk disease at several levels of the lumbar spine on his MRI;" a "reduced ankle reflex on the left side;" and "evidence of mechanical low back pain on physical examination through 2 different testing methods." R. at 423. In response to a question regarding "Claimants [sic] physical capabilities currently?" he wrote that Ortiz was "[v]ery limited because of the persistence of the back pain limiting his ability to even do simple household chores and light yard work." R. at 423.

In sum, with respect to the intensity of Ortiz's pain symptoms, there appear to be no inconsistencies between Dr. Boolbol's opinion and those of Dr. Wakefield and Dr. Lucier. *See Halloran*, 362 F.3d at 32. The ALJ accordingly erred by failing to give controlling weight to Dr. Boolbol's opinion in that matter and, as a result, arbitrarily declined to consider how Ortiz's constant—as opposed to worsening—pain affected his ability to work. That error also affects the treatment of other medical evidence in the case. Accordingly, the Recommended Ruling is rejected with respect to its discussion of the evidence provided by both Dr. Boolbol and Dr. Christie, and the case is remanded to the ALJ for further proceedings. Furthermore, because the ALJ's hypothetical question to the Vocational Expert did not include any references to Ortiz's disabling pain, that testimony also must be reconsidered.

## IV. Conclusion

For the foregoing reasons, the Recommended Ruling of April 13, 2015 is ADOPTED in part and REJECTED in part. The decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent with this ruling.

It is so ordered.

Dated at Bridgeport, Connecticut, this 27th day of October, 2015.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge